**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
Nashville Division**

|  |  |
|---|---|
| DOLLAR GENERAL CORPORATION, | |
| *Plaintiff,* | Case No. _____ |
| v. | |
| JOHNÉ BATTLE, | |
| *Defendant.* | |

## DOLLAR GENERAL CORPORATION'S VERIFIED COMPLAINT

Plaintiff Dollar General Corporation ("Dollar General"), through counsel, seeks injunctive relief against its former Chief Diversity Officer, Johné Battle ("Battle"). In violation of his employment agreements with Dollar General, copies of which are attached hereto, Battle has taken Dollar General's confidential, proprietary, trade secret, and attorney-client privileged information. Battle only had access to and obtained such information because of his employment with Dollar General. Absent his employment with Dollar General, Battle would not have access to or knowledge of such information. Further, Battle has used and/or intends to use this confidential, proprietary, and trade secret information to further his own independent consulting business and interests, which constitutes a misappropriation of Dollar General's trade secret information and a breach of the duty of loyalty. Battle has also stated his intent further breach his employment agreements by disclosing Dollar General's confidential, proprietary, trade secret, and attorney-client privileged information.

1

Pursuant to the arbitration provisions of Battle's employment agreements, Dollar General intends to pursue arbitration against Battle for the foregoing conduct. In the interim, however, Dollar General seeks injunctive relief to prevent Battle's further breach of his employment agreements by disclosing or using unlawfully possessed confidential, proprietary, trade secret, and attorney-client privileged information belonging to Dollar General, pending an arbitrator's ruling on the merits of Dollar General's claims.[1] Dollar General also seeks an order compelling arbitration.

## PARTIES

1. Dollar General is a Tennessee corporation with its principal place of business at 100 Mission Ridge, Goodlettsville, TN 37072.

2. Battle is a former Chief Diversity Officer employed by Dollar General. Upon information and belief, Battle is a resident and domiciliary of the State of Florida who resides and may be served with process at 16023 Tradewind Terrace, Bradenton, Florida 34211-1413.

---

[1] Following Battle's termination, Dollar General discovered that this is not the first time Battle has breached an employment agreement by failing to return an employer's confidential and proprietary information upon termination. *See GridIron Technologies, LLC v. Johné Battle*, No. 2:07-cv-00040-ROS (D. Ariz. Feb. 26, 2008). In *GridIron,* Battle's former employer alleged that after being suspended for impermissible use of the company credit card for personal expenses, Battle removed Gridiron's client files, computer, proprietary software, and other confidential information from his office. *Id.,* at Am. Compl., ECF No. 56, ¶¶ 25-26. GridIron then made a demand upon Battle for the prompt and immediate return of its property and information, including all client files and related documents and the computer containing GridIron's proprietary software. *Id.* at ¶ 28. Although Battle eventually returned the computer during the course of litigation, the computer had been completely wiped as to any software or data. *See id.* at ECF No. 52-1, ¶¶ 18-19. GridIron was ultimately granted summary judgment on its claims against Battle. *See id.* at ECF No. 52.

2

## JURISDICTION AND VENUE

3.     Subject matter jurisdiction exists pursuant to 28 U.S.C. §§ 1331 and 1367 in that the Complaint raises a claim under the federal Defend Trade Secrets Act, 18 U.S.C. § 1836, and the remainder of Dollar General's claims form part of the same case or controversy.

4.     Subject matter jurisdiction also exists pursuant to 28 U.S.C. § 1332 in that there is complete diversity of citizenship between Dollar General and Battle and the amount in controversy exceeds $75,000, exclusive of interest and costs.

5.     This Court has personal jurisdiction over Battle under Fed. R. Civ. P. 4(k) and Tenn. Code § 20-2-223 because Battle contracted to supply services in Tennessee and acted as a director or officer of a domestic corporation, and therefore should reasonably have expected to be subject to the jurisdiction of a court in the State of Tennessee.

6.     This Court's assertion of personal jurisdiction over Battle is consistent with the Due Process Clause of the Constitution.

7.     Venue is proper with this Court because the Employment Agreement forming the basis of Dollar General's breach of contract claim against Battle provides that disputes shall be decided by, and arbitration awards affirmed by, a court of competent jurisdiction in Davidson County, Tennessee, or a district court in the U.S. District for the Middle District of Tennessee.

8.     Venue is also proper in this Court under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred, or a

3

substantial part of property that is the subject of the action is situated in, the State of Tennessee. Specifically, upon information and belief, Battle downloaded confidential, proprietary, trade secret, and attorney-client privileged information maintained at Dollar General's place of business in this district, and while performing work on behalf of Dollar General, and on at least some occasions while present on Dollar General's premises.

9.  Venue is also proper in this Court under 28 U.S.C. § 1391(b)(3) because Battle is subject to this court's personal jurisdiction with respect to this lawsuit.

## FACTS

10.  Beginning on or around June 15, 2020, Dollar General employed Johné Battle ("Battle") as a Vice President, Diversity & Inclusion.

11.  On or around June 1, 2022, Battle was promoted to the role of Dollar General's Chief Diversity Officer.

12.  Following Battle's promotion to Chief Diversity Officer, Battle entered into an employment agreement with Dollar General, dated August 23, 2022 (the "2022 Employment Agreement"). A true and correct copy of the 2022 Employment Agreement is attached hereto as **Exhibit 1**.

13.  On or around April 1, 2024, Battle received an increase to his compensation.

14.  On or around April 4, 2024, Dollar General and Battle entered into an subsequent employment agreement, a true and correct copy of which is attached hereto as **Exhibit 2** (the "2024 Employment Agreement").

4

15. Pursuant to the 2024 Employment Agreement, Battle agreed (among other things):

   a. To devote his full-time efforts to the business and affairs of Dollar General (¶ 3.b);

   b. To promote the best interests of the Company (¶ 3.b);

   c. To take no action that is likely to damage the public image of Dollar General (¶ 3.b);

   d. To not devote time to other activities which would inhibit or otherwise interfere with the proper performance of his duties (¶ 3.d);

   e. To regard Dollar General's Confidential Information and Trade Secrets (as defined by the 2024 Employment Agreement) as strictly confidential and wholly-owned by Dollar General (¶ 17);

   f. To not, directly or indirectly, sell, lend, lease, distribute, license, give, transfer, assign, show, disclose, disseminate, reproduce, copy, misappropriate or otherwise communicate any Trade Secrets or Confidential Information (as defined by the 2024 Employment Agreement) to any person or Entity for any purpose other than his job duties for Dollar General (¶ 17);

   g. To exercise his best efforts to ensure the continued confidentiality of all Trade Secrets and Confidential Information (as defined by the 2024 Employment Agreement) (¶ 17);

h.  That the provisions of Paragraph 17 are reasonable, necessary, and appropriately tailored to protect Dollar General's legitimate interests in its Trade Secret and Confidential Information, and that Battle's compensation and benefits are in consideration for these (among other) obligations (¶ 21); and

i.  To, upon termination, return to Dollar General all written, electronic, recorded, or graphic materials of any kind belonging or relating to Dollar General, including any originals, copies or abstracts, in his possession (¶ 22).

16.  The 2022 Employment Agreement contains these same provisions.

17.  Battle further agreed to arbitrate all claims with Dollar General arising out of or relating to his 2024 Employment Agreement with Dollar General, although he also acknowledged that notwithstanding this provision, Dollar General is entitled to seek injunctive relief to "enforce the covenant not to compete, solicit, and/or confidentiality, publicity and materials covenants as set forth in Sections 14 through 20 and Section 22 of" the 2024 Employment Agreement (¶ 25).

18.  Battle similarly agreed in the 2022 Employment Agreement to arbitrate all claims related to the 2022 Employment Agreement (¶ 24.i).

19.  In exchange for the promises of the 2022 Employment Agreement and the 2024 Employment Agreement, Dollar General promoted Battle to Chief Diversity Officer, continued to employ Battle in that role, paid Battle substantial compensation

6

and provided Battle with significant employment benefits, and provided Battle with a raise in compensation.

20.   But for Battle's agreement to the provisions of the 2022 Employment Agreement and the 2024 Employment Agreement, Dollar General would not have promoted Battle to Chief Diversity Officer, continued to employ Battle in that role, provided him with such compensation and benefits, or provided him with a raise to his compensation and benefits.

21.   Additionally, throughout the course of his employment, Battle received and acknowledged receipt of Dollar General's policies, in the form of its Employee Handbook, its Code of Conduct, and other written policies and computer-based trainings. These policies, like Battle's 2022 Employment Agreement and 2024 Employment Agreement, expressly prohibited employees, including Battle, from downloading any Dollar General information to non-Dollar General owned or controlled storage devices.

22.   Although Dollar General was aware that Battle maintained an independent consulting business—Inclusion Genius Factory—Dollar General clearly instructed Battle that he was not to utilize any Dollar General confidential, proprietary, or trade secret information in the furtherance of his consulting business, and that he was to dedicate his full-time efforts to the best interests of Dollar General.

23.   On or around July 11, 2024, Dollar General discovered that Battle's website for Inclusion Genius Factory displayed and made use of Dollar General's brand logo and videos and pictures taken during Dollar General events. True and

7

correct copies of emails pertaining to this discovery are attached hereto as **Exhibit 3**. True and correct copies of historical captures of Battle's website, which Dollar General retrieved from the "wayback machine"[2] are attached hereto as **Exhibit 4.**

24.     On July 12, 2024, as a result of this discovery, which only compounded performance issues Dollar General had previously discussed with Battle, Dollar General terminated Battle's employment.

25.     At the time of his termination, Kathy Reardon, Dollar General's Chief People Officer, and Kimberly Huffman, Vice President of Human Resources, reminded Battle that he must return all Dollar General equipment (including electronic devices) and any Dollar General documents and information in his possession to Dollar General.

26.     Battle was reminded again of these requirements in writing via email on July 12, 2024. A true and correct copy of this email is attached hereto as **Exhibit 5**.

27.     Despite this reminder, Battle did not immediately return Dollar General's electronic devices, documents, and information.

28.     Following his termination, Battle was offered a generous severance payment that was in accordance with the terms of his 2024 Employment Agreement. The severance payment was conditioned upon execution of a release agreement within 21 days.

---

[2] http://web.archive.org/.

29.     Shortly after Battle's employment was terminated, Dollar General discovered that Battle had, in the weeks and months leading up to his termination, downloaded a substantial number of sensitive Dollar General documents and information to a USB drive. Upon information and belief, the documents downloaded to the USB drive included confidential, proprietary, trade secret and attorney-client privileged documents.

30.     On July 22, 2024, Dollar General sent Battle a letter, directing him to immediately return all Dollar General information in his possession, including his electronic devices (which he still had not returned as of that date), and the USB drive to which he downloaded a substantial amount of Dollar General documents and information. Among the documents Battle downloaded to the USB drive are numerous documents that contain confidential, proprietary, and trade secret information (*e.g.,* diversity data, strategies, and initiatives; documents related to succession planning or strategic planning; and other corporate strategies and plans), and also documents that contain data and research prepared at the advice and direction of legal counsel and which was used by legal counsel for the purposes of legal advice (*e.g.,* documents related to an attorney-client privileged study conducted for purposes of providing legal advice to the Board of Directors). A true and correct copy of this correspondence, along with a sample listing of the downloaded documents, is attached hereto as **Exhibit 6**.

31.     Rather than promptly return Dollar General's electronic devices or the USB drive, however, Battle's attorney reached out to Dollar General on July 29, 2024,

9

accusing Dollar General for the first time of terminating Battle's employment because of his race and in retaliation for alleged protected activity. Battle's attorney did not explain Battle's continued failure to satisfy the obligations of his 2022 Employment Agreement, 2024 Employment Agreement, and Dollar General's Corporate policies by refusing to return Dollar General's documents and information.

32. On August 2, 2024, the 21-day period for Battle to return the executed release agreement entitling Battle to his severance payment expired. Battle did not execute the release agreement within 21 days and therefore forfeited the right to any severance payment.

33. On August 16, 2024, Dollar General once again demanded, through counsel, the return of its electronic devices and the USB drive onto which Battle downloaded Dollar General's confidential, proprietary, trade secret, and attorney-client privileged information.

34. Over one month after Battle's termination, on August 20, 2024, Dollar General finally received Battle's electronic devices. However, Battle still refused to provide the USB drive or Dollar General's documents and information and continued to maintain them in his possession.

35. On August 22, 2024, Dollar General's counsel sent a letter to Battle demanding that Battle make the USB drive available for forensic examination and reiterating the demand for return of Dollar General documents and information.

36. On or around August 24, 2024, Battle finally placed the USB drive in his counsel's possession, but still refused to provide the USB drive, along with any

10

electronic devices into which it was inserted, for a third-party forensic examination, and still refused to return any hard copy documents or information or certify under penalty of perjury that none are in his possession.

37.     Between August 24, 2024, and October 17, 2024, Battle's counsel and Dollar General's counsel negotiated over the forensic examination of the USB drive and any devices into which Battle inserted the USB drive.

38.     These negotiations culminated on October 17, 2024, with Dollar General offering to bear the entire expense of the forensic examination of the USB drive and any personal electronic devices into which Battle inserted the USB drive. Dollar General also located a neutral forensic examiner and provided Battle's counsel with a draft forensic protocol. A true and correct copy of this correspondence is attached hereto as **Exhibit 7**.

39.     Rather than respond to Dollar General's offer to cover the expense of a forensic examination, on October 21, 2024, Battle submitted a demand letter to Dollar General, threatening to file a Charge with the EEOC unless Dollar General agrees to (1) mediate with Battle; (2) hold the mediation within 30 days; and (3) make an opening settlement offer greater than the already generous severance payment offered to Battle upon termination of employment. [3] A true and correct copy of the

---

[3] Although Battle's counsel designated this demand letter as subject to Federal Rule of Evidence 408, that rule only shields the demand letter from being admitted for the purpose of either proving or disproving "the validity or amount of a disputed claim or to impeach by a prior inconsistent statement or a contradiction." As the comments to Rule 408 note, there is extensive federal caselaw permitting such settlement demands to be admitted for the purposes of proving wrongs committed in the course of settlement negotiation. *See Uforma/Shelby Bus. Forms, Inc. v. NLRB*, 111 F.3d

11

demand letter is attached hereto as **Exhibit 8.**[4]

40.     In the EEOC Charge, Battle includes information he only could have obtained from Dollar General's confidential, proprietary, trade secret, and attorney client privileged documents that Battle downloaded to the USB drive.

41.     As a result of Battle's ongoing and continued conduct, Dollar General has little choice but to commence legal action against Battle to enforce the terms of the 2022 Employment Agreement and 2024 Employment Agreement, to prevent Battle's continued possession, disclosure, us,e and misappropriation of Dollar General's confidential, proprietary, and trade secret information, and most critically, to stop the disclosure of its attorney-client privileged information.

42.     Accordingly, in accordance with the arbitration agreement included in the 2022 Employment Agreement (¶ 24) and 2024 Employment Agreement (¶ 25),

---

1284 (6th Cir. 1997) (finding Rule 408 is inapplicable when the claim is based upon a wrong that is committed during the course of settlement negotiations). In fact the Sixth Circuit held: "Rule 408 is . . . inapplicable when the claim is based upon some wrong that was committed in the course of the settlement discussions; e.g., . . .***breach of contract***, . . . .Rule 408 does not prevent the plaintiff from proving his case; ***wrongful acts are not shielded because they took place during compromise negotiations.***" *Id.* (emphasis added) (quoting 23 CHARLES ALAN WRIGHT & KENNETH W. GRAHAM, JR., FEDERAL PRACTICE AND PROCEDURE: EVIDENCE § 5314 (1st ed. 1980)). "The inapplicability of Rule 408 to suits seeking to vindicate wrongs committed during settlement discussions derives from the more general principle that Rule 408 only bars the use of compromise evidence to prove the validity or invalidity of the claim that was the subject of the compromise, not some other claim." *Id.*

[4] The EEOC Charge attached to this demand letter has been omitted from this Complaint, as it includes confidential, proprietary, trade secret, and attorney-client privileged information. Dollar General would be happy to provide the Charge to the Court for *in camera* review.

Dollar General has filed a demand for arbitration on the claims asserted herein with the American Arbitration Association ("AAA").

43.     However, because Dollar General will be imminently and irreparably harmed by Battle's ongoing breach of the 2022 Employment Agreement and 2024 Employment Agreement through his retention and use of Dollar General's confidential, proprietary, trade secret, and attorney-client privilefed information, Dollar General also simultaneously seeks injunctive relief from this Court to maintain the status quo pending an arbitrator's final determination on the merits of Dollar General's claims against Battle.

## FIRST CAUSE OF ACTION

### (Breach of Contract, Tennessee Law)

44.     Dollar General incorporates each of the foregoing paragraphs as if fully set forth herein.

45.     On August 23, 2022, after being promoted to the role of Chief Diversity Officer, Battle entered into the 2022 Employment Agreement with Dollar General.

46.     On April 1, 2024, Battle entered into the 2024 Employment Agreement with Dollar General, following an increase in compensation.

47.     Both the 2022 Employment Agreement and the 2024 Employment Agreement are valid and enforceable contracts between Battle and Dollar General.

48.     Battle and Dollar General exchanged adequate and sufficient consideration in connection with the 2022 Employment Agreement and the 2024 Employment Agreement.

13

49. Dollar General performed all its obligations under the 2022 Employment Agreement and the 2024 Employment Agreement, including employing Battle, paying Battle substantial compensation and providing Battle with considerable employment benefits, promoting Battle, and providing Battle a raise in compensation.

50. The provisions of Paragraphs 16, 17 and 22 of the 2022 Employment Agreement and the 2024 Employment Agreement are appropriately tailored to protect Dollar General's legitimate business interests and are neither harsh nor oppressive in curtailing Battle's legitimate efforts to earn a livelihood.

51. The provisions of Paragraphs 16, 17, and 22 of the 2022 Employment Agreement and the 2024 Employment Agreement, are reasonable from the standpoint of public policy and consistent with industry standards.

52. Battle's conduct described herein, including but not necessarily limited to, taking, retaining, and/or downloading Dollar General's confidential, proprietary, trade secret, and attorney-client privileged information to a USB device; upon information and belief, using that confidential, proprietary, trade secret, and attorney-client privileged information to further his own consulting business; refusing to return all of the confidential, proprietary, trade secret, and attorney-client privileged information in his possession immediately upon Dollar General's request; and using, or threatening to use, Dollar General's confidential, proprietary, trade secret, and attorney-client privileged information in his charge of discrimination to

14

the EEOC, is a breach of the 2022 Employment Agreement and the 2024 Employment Agreement.

53.     Battle continues to violate his contractual obligations and will continue to violate these obligations in the future.

54.     Battle's breach of his 2022 Employment Agreement and 2024 Employment Agreement is willful and malicious. Consequently, Dollar General is entitled to punitive and exemplary damages.

55.     Additionally, because Battle's conduct is ongoing, Dollar General faces an immediate threat of continuing irreparable harm, for which Dollar General lacks an adequate remedy at law.

56.     Unless Battle is enjoined from the foregoing conduct, Dollar General will be irreparably harmed by:

     a.     Disclosure or use of Dollar General's confidential, proprietary, and trade secret information that is the sole property of Dollar General;

     b.     Disclosure of Dollar General's attorney-client privileged information, which privilege does not belong to Battle, which violates the sanctity of the attorney-client privilege, and which may jeopardize Dollar General's ability to maintain its assertion of privilege over said documents and information; and

     c.     Present economic loss, which is unascertainable at this time, and future economic loss, which is presently incalculable, but in no event less than $75,000 exclusive of interest and costs.

15

57.    Dollar General is entitled to preliminary and permanent injunctive relief to protect its rights under the 2022 Employment Agreement and the 2024 Employment Agreement.

## SECOND CAUSE OF ACTION

### (Breach of the Duty of Loyalty, Tennessee Law)

58.    Dollar General incorporates each of the foregoing paragraphs as if fully set forth herein.

59.    Battle, as an officer of Dollar General, owed Dollar General a fiduciary duty of loyalty not to actively use his position for his own personal benefit, and/or to hinder Dollar General in its ability to succeed in its business operations.

60.    Battle specifically acknowledged his duty of loyalty to Dollar General in his 2022 Employment Agreement and 2024 Employment Agreement.

61.    Battle was required, during his employment with Dollar General, to act solely for the benefit of Dollar General in matters within the scope of his employment and to refrain from engaging in conduct adverse to Dollar General's interest.

62.    Battle has breached his duty of loyalty to Dollar General by, among other things, utilizing Dollar General's brand logo, photographs, and videos to advertise on the website for his private consulting business, and therefore using his position, experience, and knowledge gained at Dollar General along with Dollar General documents and materials to further  his private consulting business and related endeavors; and by undertaking speaking engagements, at which he held himself out as a representative of Dollar General without Dollar General's

16

involvement or approval. This conduct is related to matters within the scope of his employment for Dollar General as its Chief Diversity Officer. Battle has engaged in this conduct adverse to Dollar General's interests. In so doing, Battle acted for his own self-interests, in direct violation of Dollar General's policies, and in direct competition with Dollar General's interests.

63.     By breaching the duty of loyalty to Dollar General, Battle acted with malice, wantoness, bad faith, and with the specific intent to cause harm to Dollar General. Accordingly, to punish Battle and to deter him from engaging in such misconduct, Dollar General is entitled to punitive damages in an amount to be determined at a final arbitration hearing.

64.     As a result of Battle's conduct, Dollar General has suffered financial and economic damages, and/or Battle has been unjustly enriched.

### THIRD CAUSE OF ACTION

**(Violation of the Tennessee Uniform Trade Secrets Act, Tenn. Code Ann. § 47-25-25, et seq.)**

65.     Dollar General incorporates each of the foregoing paragraphs as if fully set forth herein.

66.     Dollar General's diversity strategies, data, and initiatives, and its strategic and succession planning documents constitute highly confidential materials, which are not generally known in the industry, and from which Dollar General derives independent economic value.

17

67.     Dollar General invests substantial time and resources into developing its diversity strategies, data, and initiatives; and its strategic and succession planning documents.

68.     Dollar General derives significant economic and competitive advantage in the marketplace by maintaining the secrecy and confidentiality of its trade secret diversity strategies, data, and initiatives; and its strategic and succession planning documents. [5]

69.     Other companies, particularly Dollar General's direct competitors, could obtain an economic advantage by gaining access to such materials, in the form of avoiding the costs of developing those materials themselves, and using those materials to unfairly compete with Dollar General in the recruitment and retention of a diverse workforce, or in their own strategic and succession planning.

70.     Dollar General maintains the confidentiality of these materials by, among other things, requiring employees with access to such materials to execute agreements (like Battle's Employment Agreement) providing for the confidentiality of such materials and the return of such materials to Dollar General upon termination of employment. Dollar General also maintains corporate policies providing for the security and protection of such materials.

---

[5] Additionally, it is worth noting that such materials contain the private information of individuals not involved in this dispute and that any disclosure or use of such documents compromises their privacy.

18

71.     Battle gained access to Dollar General's diversity strategies, data, and initiatives, and its strategic and succession planning documents, through a position of trust as Dollar General's Chief Diversity Officer.

72.     Battle has, in violation of Dollar General's policies and his Employment Agreement, downloaded, copied, and retained in his possession, Dollar General's diversity strategies, data, and initiatives, and its strategic and succession planning documents.

73.     Upon information and belief, Battle knowingly and willfully, without right or justification, misappropriated Dollar General's diversity strategies, data, and initiatives, and its strategic and succession planning documents, for his own commercial purposes to further his private consulting business, and to the detriment of Dollar General.

74.     As a result, Dollar General has suffered damages, including but not limited to damages in the form of unjust enrichment to Battle.

75.     Because Battle's misappropriation was willful and malicious, Dollar General is also entitled to exemplary/punitive damages and attorney's fees.

76.     Moreover, because Battle's unlawful conduct is ongoing, Dollar General faces an immediate threat of continuing irreparable harm, for which Dollar General lacks an adequate remedy at law.

77.     Unless Battle is enjoined from the foregoing conduct, Dollar General will be irreparably harmed by:

a. Disclosure or use of Dollar General's confidential, trade secret, and proprietary information that is the sole property of Dollar General;

b. Loss of goodwill; and

c. Present economic loss, which is unascertainable at this time, and future economic loss, which is presently incalculable, but in no event less than $75,000 exclusive of interest and costs.

### FOURTH CAUSE OF ACTION

### (Violation of the Federal Defend Trade Secrets Act, 18 U.S.C. § 1836, et seq.)

78.     Dollar General incorporates each of the foregoing paragraphs as if fully set forth herein.

79.     Dollar General's diversity strategies, data, and initiatives, and its strategic and succession planning documents constitute highly confidential materials, which are not generally known in the industry, and from which Dollar General derives independent economic value.

80.     Dollar General invests substantial time and resources into developing its diversity strategies, data, and initiatives; and its strategic and succession planning documents.

81.     Dollar General derives significant economic and competitive advantage in the marketplace by maintaining the secrecy and confidentiality of its trade secret

diversity strategies, data, and initiatives; and its strategic and succession planning documents. [6]

82.  Other companies, particularly Dollar General's direct competitors, could obtain an economic advantage by gaining access to such materials, in the form of avoiding the costs of developing those materials themselves, and using those materials to unfairly compete with Dollar General in the recruitment and retention of a diverse workforce, or in their own strategic and succession planning.

83.  Dollar General maintains the confidentiality of these materials by, among other things, requiring employees with access to such materials to execute agreements (like Battle's Employment Agreement) providing for the confidentiality of such materials and the return of such materials to Dollar General upon termination of employment. Dollar General also maintains corporate policies providing for the security and protection of such materials.

84.  Battle gained access to Dollar General's diversity strategies, data, and initiatives, and its strategic and succession planning documents, through a position of trust as Dollar General's Chief Diversity Officer.

85.  Battle has, in violation of Dollar General's policies and his Employment Agreement, downloaded, copied, and retained in his possession, Dollar General's diversity strategies, data, and initiatives, and its strategic and succession planning documents.

---

[6] Additionally, it is worth noting that such materials contain the private information of individuals not involved in this dispute and that any disclosure or use of such documents compromises their privacy.

86. Upon information and belief, Battle knowingly and willfully, without right or justification, misappropriated Dollar General's diversity strategies, data, and initiatives, and its strategic and succession planning documents, for his own commercial purposes to further his private consulting business, and to the detriment of Dollar General.

87. As a result, Dollar General has suffered damages, including but not limited to damages in the form of unjust enrichment to Battle.

88. Because Battle's misappropriation was willful and malicious, Dollar General is also entitled to exemplary/punitive damages and attorney's fees.

89. Moreover, because Battle's unlawful conduct is ongoing, Dollar General faces an immediate threat of continuing irreparable harm, for which Dollar General lacks an adequate remedy at law.

90. Unless Battle is enjoined from the foregoing conduct, Dollar General will be irreparably harmed by:

    d. Disclosure or use of Dollar General's confidential, trade secret, and proprietary information that is the sole property of Dollar General;

    e. Loss of goodwill; and

    f. Present economic loss, which is unascertainable at this time, and future economic loss, which is presently incalculable, but in no event less than $75,000 exclusive of interest and costs.

## **PRAYER FOR RELIEF**

WHEREFORE, Dollar General prays for relief as follows:

A. Entry of a Temporary Restraining Order and preliminary injunction, pending arbitration before AAA or until further order of this Court, ordering Battle to:

    i. Return all copies of Dollar General's confidential, proprietary, trade secret, and attorney-client privileged information he has in his possession to Dollar General;

    ii. Submit the USB drive onto which Battle downloaded Dollar General's confidential, proprietary, trade secret, and attorney-client privileged information, and all electronic devices into which that USB drive has been inserted since June 15, 2020, for a forensic inspection to confirm whether any such information has been impermissibly used and to facilitate the permanent removal of all such information from Battle's possession;

    iii. Submit a signed declaration under penalty of perjury that identifies all third parties with whom Battle has shared Dollar General's confidential, proprietary, trade secret, and attorney-client privileged information, identifies with particularity what information Battle shared with each such third party, and certifies that all copies of documents containing Dollar General's confidential, proprietary, trade secret, and attorney-client privileged information have been returned to Dollar General or destroyed such that no such documents are in defendant's possession; and

23

iv. Refrain from using, disclosing, or disseminating Dolar General's confidential, proprietary, trade secret, or attorney-client privileged information until a final determination on the merits of the foregoing claims may be made by the arbitrator;

B. Entry of an order directing the Parties, pursuant to the Federal Arbitration Act, 9 U.S.C. §§ 3-4, to an arbitration hearing on the merits of Dollar General's claims; and

C. A stay of any further decisions on the merits of this action until an arbitration hearing on the merits of Dollar General's claims has been held.

DATED: November 7, 2024

Respectfully submitted,

/s/ Charley Williamson
Charley Williamson
Tenn. Bar No. 018287
Charley.Williamson@hklaw.com
Taylor Jarvis Askew
Tenn. Bar No.033193
Taylor.Askew@hklaw.com
Holland & Knight
511 Union Street
Suite 2700
Nashville, TN 37219
Tel: (615) 244-6380

Amy Morrissey Turk
(*Pro Hac Vice forthcoming*)
aturk@mcguirewoods.com
Virginia Bar No. 44957
McGuireWoods LLP
World Trade Center

24

101 West Main Street
Suite 9000
Norfolk, VA 23510-1655
Tel: (757) 640-3711

Joel S. Allen
(*Pro Hac Vice forthcoming*)
jallen@mcguirewoods.com
Texas Bar No. 00795069
Paul M. Chappell
(*Pro Hac Vice forthcoming*)
pchappell@mcguirewoods.com
Texas Bar No. 24097489
McGuireWoods LLP
2601 Olive Street
Suite 2100
Dallas, TX 75201
Tel: (214) 932-6400

Laura J. Cooley
(*Pro Hac Vice forthcoming*)
lcooley@mcguirewoods.com
Virginia Bar No. 93446
McGuireWoods LLP
Gateway Plaza
800 East Canal Street
Richmond, VA 23219
Tel: (804) 775-1675

**ATTORNEYS FOR DOLLAR
GENERAL CORPORATION**

## VERIFICATION

**State of Tennessee** )

**City/County of** Sumner )

    The undersigned authorized representative of Dollar General Corporation ("Dollar General"), being duly sworn on her oath, does hereby state that she has read the foregoing Verified Complaint, and that the statements set forth in the Verified Complaint are true as she believes based on her personal knowledge and the information supplied by Dollar General's employees and agents and through records kept by Dollar General in the ordinary course of business.

    This _7th_ day of November, 2024.

By: _Kathy Reardon_
Kathy Reardon

Notary: _Julie L. Filson_

JULIE L. FILSON
STATE
OF
TENNESSEE
NOTARY
PUBLIC
SUMNER COUNTY
My Commission Expires NOV. 19, 2025

26