IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
Nashville Division

| | |
|---|---|
| DOLLAR GENERAL CORPORATION,<br><br>*Plaintiff,*<br><br>v.<br><br>JOHNÉ BATTLE,<br><br>*Defendant.* | Case No. 3:24-cv-01330 |

**DOLLAR GENERAL CORPORATION'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION**

## I. INTRODUCTION

Defendant Johné Battle ("Battle") was terminated from his employment with Dollar General Corporation ("Dollar General") for performance issues and misuse of Dollar General's confidential, trade secret, and proprietary information. Pursuant to his employment agreements with Dollar General, Battle agreed not to take or disclose Dollar General's confidential, proprietary, trade secret, and attorney-client privileged information for any purpose other than Battle's job duties for Dollar General, and to return all Dollar General confidential, proprietary, trade secret, and attorney-client privileged information upon his termination. Battle has breached his contractual obligations by not only taking and refusing to return Dollar General's information, but by then disclosing that impermissibly downloaded confidential, proprietary, trade secret, and attorney-client privileged information to his attorney, and threatening to further disclose such information to the EEOC.

1

Dollar General and Battle agreed to arbitrate any disputes regarding Battle's employment with the American Arbitration Association ("AAA"). Accordingly, Dollar General has submitted a demand for arbitration with AAA. However, prior to resolving the merits of Dollar General's dispute with Battle in arbitration, Dollar General seeks a temporary restraining order and preliminary injunction enjoining Battle from further disclosing Dollar General's confidential, proprietary, trade secret, and attorney-client privileged information Battle impermissibly took from Dollar General; and requiring Battle to return all such information to Dollar General. Dollar General will suffer irreparable harm without such relief.

## II. RELEVANT FACTS

### A. Battle's Employment with Dollar General

Dollar General hired Battle on June 15, 2020 as its Vice President of Diversity and Inclusion. (Compl., ¶ 10.) After two years, Dollar General promoted Battle into the role of Chief Diversity Officer. (*Id.*, ¶ 11.) On August 23, 2022, following Battle's promotion to Chief Diversity Officer, Battle entered into an employment agreement with Dollar General (the "2022 Employment Agreement"). (Compl., ¶ 12 & Ex. 1.) Following a raise on April 1, 2024, Battle entered into a subsequent employment agreement (the "2024 Employment Agreement"). (*Id.*, ¶¶ 13-14 & Ex. 2.)

Under both the 2022 Employment Agreement and the 2024 Employment Agreement, Battle agreed, among other things, to: (1) not directly or indirectly transfer, distribute, disseminate, reproduce, copy, misappropriate, or otherwise communicate any of Dollar General's confidential or trade secret information to any person or entity for any purpose other than Battle's job duties for Dollar General; and

2

(2) upon termination or at Dollar General's request, return to Dollar General all written, electronic, recorded, or graphic materials of any kind belonging or relating to Dollar General. (*Id.*, ¶¶ 12-16 & Exs. 1, 2.)

Battle further agreed to arbitrate any claims arising from his employment with Dollar General, except that Battle agreed that Dollar General may seek injunctive relief to enforce the foregoing covenants. (*Id.*, ¶ 17 & Ex. 2; *see also* ¶ 18 & Ex. 1).

**B.     Battle Misuses Dollar General's Confidential, Trade Secret, and Proprietary Information**

Battle maintained, at various times, an independent consulting business called "Inclusion Genius Factory" while employed with Dollar General. Although Dollar General knew about Battle's consulting efforts, Dollar General clearly instructed Battle not to utilize any of Dollar General's confidential, trade secret, or proprietary information in furtherance of his consulting business, and that he must devote his full time efforts to the best interests of Dollar General. (*Id.*, ¶ 22.) Despite this clear instruction, Dollar General discovered, on July 11, 2024, that Battle's website for Inclusion Genius Factory contained and made use of Dollar General's logo, and videos and pictures taken during Dollar General events. (*Id.*, ¶ 23 & Exs. 3-4.) As a result of this discovery, which compounded performance issues Dollar General had been having and discussing with Battle, Dollar General terminated Battle's employment on July 12, 2024. (*Id.*, ¶ 24.)

During a meeting with Battle regarding his termination, Dollar General reminded Battle that, under the terms of his Employment Agreements and Dollar General's policies, he must return all Dollar General equipment (including electronic

3

devices) and any Dollar General documents and information in his possession to Dollar General. (*Id.*, ¶ 25.) Battle was reminded of this again via email the next day. (*Id.*, ¶ 26 & Ex. 5.)

C. **Battle Refuses to Return Dollar General's Property, Discloses Dollar General's Information to His Attorney, and Threatens Further Disclosure**

Contrary to the clear requirements of the Employment Agreements, Battle did not immediately return his electronic devices following his termination and Dollar General's explicit request. (*Id.*, ¶ 27.) Additionally, shortly after Battle's termination, Dollar General discovered that Battle had, in the weeks and months before his termination, downloaded a substantial number of sensitive Dollar General documents and information to a USB drive. (*Id.*, ¶ 29.) The downloaded documents and information include confidential, proprietary, trade secret, and attorney-client privileged documents. (*Id.*, ¶¶ 29-30 & Ex. 6 at Ex. A) Specifically, among the documents Battle downloaded to the USB drive are numerous confidential documents that contain Dollar General's diversity data, strategy and initiatives; confidential documents that contain information related to succession and strategic planning; and confidential *and attorney-client privileged* documents that contain data and research prepared at the advice and direction of legal counsel and were used by legal counsel for the purposes of legal advice to Dollar General's Board of Directors. (*Id.*, ¶ 30 & Ex. 6 at Ex. A.)

As a result, on July 22, 2024, Dollar General sent Battle a letter directing him to immediately return all Dollar General information in his possession, including Dollar General's electronic devices (which he still had not returned as of the date of

4

the letter) and the USB drive onto which he had downloaded Dollar General documents and information. (*Id.*, ¶ 30 & Ex. 6.) Rather than promptly return Dollar General's electronic devices and the USB drive—as the 2022 Employment Agreement and the 2024 Employment Agreement require—Battle responded by accusing Dollar General (for the first time) of terminating Battle's employment because of race and alleged protected activity. (*Id.*, ¶ 31.) Battle did not explain his continued failure to return Dollar General's electronic devices, the USB drive, and any hard copy documents in his possession (or to certify under oath that he has no hard copy documents in his possession). (*Id.*)

On August 16, 2024, because Battle had still not returned its property, Dollar General was *again* forced to demand the return of its documents and information, its electronic devices, and the USB drive. (*Id.*, ¶ 33.) On August 20, 2024, Dollar General finally received its electronic devices. (*Id.*, ¶ 34.) Battle, however, still refused to turn over the USB device containing Dollar General's confidential, proprietary, trade secret, and attorney-client privileged information, and refused to return any hard copy documents in his possession (or certify under oath he has none). (*Id.*)

Dollar General made another demand that Battle turn over the USB drive on August 22, 2024, by requesting that the device be made available for forensic examination. (*Id.*, ¶ 35.) After this third demand, Battle finally placed the USB drive in his counsel's possession, but still refused to make it available to Dollar General for full forensic examination, instead trying to negotiate the parameters of such inspection. (*Id.*, ¶ 36.)

5

Between August 24, 2022 and October 17, 2024, Battle's counsel and Dollar General's counsel negotiated over the terms of a forensic examination of the USB drive and any devices into which Battle inserted the USB drive. (*Id.*, ¶ 37.) On October 17, 2024—in order to facilitate the resolution of any potential disputes between Dollar General and Battle regarding Battle's breach of his Employment Agreement and suspected misappropriation of trade secrets—Dollar General offered to bear the entire expense of the forensic examination of the USB device and any of Battle's personal electronic devices into which the USB drive was inserted. (*Id.*, ¶ 38 & Ex. 7.)

Rather than respond to this offer, however, on October 21, 2024, Battle submitted a demand letter threatening to file a Charge with the EEOC[1] unless Dollar General agrees to pay Battle a large sum of money.[2] (*Id.*, ¶ 39 & Ex. 8.) Although

---

[1] Dollar General would be happy to provide the EEOC charge to the Court for an in camera review, but has omitted it from the Verified Complaint due to its description of confidential, proprietary, trade secret, and attorney-client privileged information.

[2] Although Battle's counsel designated this demand letter as subject to Federal Rule of Evidence 408, that rule only shields the demand letter from being admitted for the purpose of either proving or disproving "the validity or amount of a disputed claim or to impeach by a prior inconsistent statement or a contradiction." As the comments to Rule 408 note, there is extensive federal caselaw permitting such settlement demands to be admitted for the purposes of proving wrongs committed in the course of settlement negotiation. See *Uforma/Shelby Bus. Forms, Inc. v. N.L.R.B.*, 111 F.3d 1284 (6th Cir. 1997) (finding Rule 408 is inapplicable when the claim is based upon a wrong that is committed during the course of settlement negotiations). In fact the Sixth Circuit held: "Rule 408 is . . . inapplicable when the claim is based upon some wrong that was committed in the course of the settlement discussions; e.g., . . . ***breach of contract***, . . . . Rule 408 does not prevent the plaintiff from proving his case; ***wrongful acts are not shielded because they took place during compromise negotiations***." *Id.* at 1293 (emphasis added) (quoting 23 CHARLES ALAN WRIGHT & KENNETH W. GRAHAM, JR., FEDERAL PRACTICE AND PROCEDURE: EVIDENCE § 5314 (1st ed. 1980)). "The inapplicability of Rule 408 to suits seeking

Battle is certainly entitled to submit a Charge to the EEOC related to any concerns he may have regarding unlawful employment actions, Battle enclosed a draft Charge with his demand which made clear that he intends to include in his EEOC Charge information he only could have obtained from the documents he impermissibly downloaded to the USB drive, including Dollar General's confidential, proprietary, trade secret, and attorney-client privileged information (that is, data and research findings collected at the advice and direction of legal counsel and used to inform advice from legal counsel to Dollar General's Board of Directors). (*Id.*, ¶ 40.) It was also clear through Battle's letter and his draft EEOC Charge that Battle has already impermissibly shared this information with his attorney. (*Id.*) Dollar General believes that Battle may or intends to provide its attorney-client privileged documents and information, along with Dollar General's confidential, proprietary, and trade secret information which he unlawfully possesses, to the EEOC in support of his Charge.

Dollar General has no idea how else Battle has been using, or may intend to use, Dollar General's confidential, proprietary, trade secret, and attorney-client privileged information, in light of Battle's refusal to permit a forensic examination of the USB drive and his electronic devices.[3]

---

to vindicate wrongs committed during settlement discussions derives from the more general principle that Rule 408 only bars the use of compromise evidence to prove the validity or invalidity of the claim that was the subject of the compromise, not some other claim." *Id.* at 1293-94.

[3] Following Battle's termination, Dollar General discovered that this is not the first time Battle has breached an employment agreement by failing to return an employer's confidential and proprietary information upon termination. *See GridIron Technologies, LLC v. Johné Battle*, No. 2:07-cv-00040-ROS (D. Ariz. Feb. 26, 2008). In *GridIron*, Battle's former employer alleged that after being suspended for

# III. LEGAL STANDARD

Generally, the purpose of a temporary restraining order and preliminary injunction is to preserve the status quo. *Fid. Brokerage Servs. LLC v. Clemens*, No. 2:13-CV-239, 2013 WL 5936671, at *4 (E.D. Tenn. Nov. 4, 2013). The same standard generally applies to issuance of temporary restraining orders and preliminary injunctions. *Provectus Biopharmaceuticals, Inc. v. Dees*, No. 3:16-CV-222, 2016 WL 8738437, at *1 (E.D. Tenn. Sept. 16, 2016). When deciding whether to grant the requested relief, courts consider and balance four factors: (1) whether the plaintiff has a strong likelihood of success on the merits; (2) whether, without the injunction, the plaintiff will suffer irreparable harm; (3) whether issuance of the injunction will cause substantial harm to the defendant or others; and (4) whether the public interest would be served by the issuance of a preliminary injunction. *Id.* (citing *McNeilly v. Land,* 684 F.3d 611, 615 (6th Cir. 2012)); *see also Performance Unlimited, Inc. v. Questar Publishers, Inc.*, 52 F.3d 1373, 1381 (6th Cir. 1995). These four factors "are not prerequisites to be met, but rather must be balanced as part of a decision to grant or deny injunctive relief." *Id.* "While the Court need not consider any single factor as

---

impermissible use of the company credit card for personal expenses, Battle removed Gridiron's client files, computer, proprietary software, and other confidential information from his office. *Id.*, at Am. Compl., ECF No. 56, ¶¶ 25-26. GridIron then made a demand upon Battle for the prompt and immediate return of its property and information, including all client files and related documents and the computer containing GridIron's proprietary software. *Id.* at ¶ 28. Although Battle eventually returned the computer during the course of litigation, the computer had been completely wiped as to any software or data. *See id.* at ECF No. 52-1, ¶¶ 18-19. GridIron was ultimately granted summary judgment on its claims against Battle. *See id.* at ECF No. 52.

either indispensable or dispositive, neither is it required to conclude that all four support its decision." *NACCO Materials Handling Grp., Inc. v. Toyota Materials Handling USA, Inc.*, 366 F. Supp. 2d 597, 605 (W.D. Tenn. 2004), *aff'd*, 246 F. App'x 929 (6th Cir. 2007) (citation omitted).

Given its limited purpose, "a preliminary injunction is customarily granted on the basis of procedures that are less formal and evidence that is less complete than in a trial on the merits." *Certified Restoration Dry Cleaning Network, L.L.C. v. Tenke Corp.*, 511 F.3d 535, 542 (6th Cir. 2007) (quoting *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981)). "[A] party 'is not required to prove his case in full at a preliminary injunction hearing and the findings of fact and conclusions of law made by a court granting the preliminary injunction are not binding at trial on the merits.'" *Id.*

## IV.     ARGUMENT & AUTHORITIES

### A.     Dollar General Has a Strong Likelihood of Success on the Merits of Its Breach of Contract Claim[4]

To establish a likelihood of success on the merits of a claim, "a plaintiff must show more than a mere possibility of success." *HealthSouth Corp. v. O'Neil*, No. 3:06-CV-651, 2006 WL 8457676, at *4 (M.D. Tenn. July 11, 2006) (quoting *Six Clinics Holding Corp., II v. Cafcomp Sys., Inc.*, 119 F.3d 393, 407 (6th Cir. 1997)). "However, it is ordinarily sufficient if the plaintiff has raised questions going to the merits so serious, substantial, difficult, and doubtful as to make them fair grounds for litigation

---

[4] In addition to its breach of contract claim, Dollar General also asserts causes of action for breach of the duty of loyalty and for violation of the Tennessee Uniform Trade Secrets Act ("TUTSA") and federal Defend Trade Secrets Act ("DTSA"). Although Dollar General is confident it will prevail on all claims in arbitration, the focus of this Motion is on its breach of contract claim.

9

and thus for more deliberate investigation." *Id.* The Sixth Circuit has made clear that "the degree of likelihood of success required may depend on the strength of the other factors." *In re DeLorean Motor Co.*, 755 F.2d 1223, 1229 (6th Cir. 1985). This is because "[t]he showing necessary to establish a likelihood of success on the merits varies inversely with the other three factors." *Partylite Gifts, Inc. v. Swiss Colony Occasions*, No. 3:06-CV-170, 2006 WL 2370338, *3 (E.D. Tenn. Aug. 15, 2006), *aff'd*, 246 F. App'x 969 (6th Cirl. 2007). Dollar General is likely to succeed on the merits of its breach of contract claim.

Battle's 2022 Employment Agreement and 2024 Employment Agreement are governed by Tennessee law. (Ex. 1 to Compl. at ¶ 24.h; Ex. 2 to Compl. at ¶ 24.h.) Under Tennessee law, "[t]he essential elements of any breach of contract claim include (1) the existence of an enforceable contract, (2) nonperformance amounting to a breach of the contract, and (3) damages caused by the breach of the contract." *Arc LifeMed, Inc. v. AMC–Tennessee, Inc.*, 183 S.W.3d 1, 26 (Tenn. Ct. App. 2005) (citation omitted); *Life Care Ctrs. of Am., Inc. v. Charles Town Assocs. Ltd. P'ship*, 79 F.3d 496, 514 (6th Cir. 1996). Dollar General can establish each element.

First, Dollar General and Battle entered into an enforceable contract governing Battle's employment with Dollar General. In Tennessee, "a valid, enforceable contract requires consideration and mutual assent, manifested in the form of an offer and an acceptance." *In re Est. of Harris*, No. M2023-01824-COA-R3-CV, 2024 WL 4315183, at *2 (Tenn. Ct. App. Sept. 27, 2024) (citing *Ace Design Grp., Inc. v. Greater Christ Temple Church, Inc.*, No. M2016-00089-COA-R3-CV, 2016 WL 7166408, at *7 (Tenn.

10

Ct. App. Dec. 8, 2016)). Dollar General provided consideration for the 2022 Employment Agreement and the 2024 Employment Agreement in the form of employment, promotion, compensation, and increased compensation, and Battle assented to both agreements by executing them and accepting the consideration provided by Dollar General. As a result, both the 2022 Employment Agreement and the 2024 Employment Agreement are enforceable contracts.

Second, Battle agreed in both the 2022 Employment Agreement and the 2024 Employment Agreement to, among other things, not copy, misappropriate, or otherwise communicate any of Dollar General's confidential information or trade secrets to any person or entity for any purpose other than Battle's job duties for Dollar General, and to return all materials belonging or relating to Dollar General upon his termination. (Compl., ¶ 12; *see also* Ex. 1 to Compl. at ¶¶ 16-17, 22 & Ex. 2 to Compl. at ¶¶ 16-17, 22.) Battle failed to abide by his obligations. Specifically, Battle copied a substantial amount of Dollar General's confidential, proprietary, trade secret, and attorney-client privileged information to a USB drive prior to his termination and has refused to return that information to Dollar General despite multiple requests to do so. Based on Battle's refusal to submit his electronic devices for forensic examination, Dollar General reasonably believes that Battle has used this information for his personal advantage. It is also clear that Battle has communicated and disclosed this unlawfully possessed confidential, proprietary, trade secret, and attorney-client privileged information to his attorney, and is threatening to further disclose it to the EEOC. As a result, Battle has breached both the 2022 Employment Agreement and

11

the 2024 Employment Agreement. *See, e.g., Allia v. Target Corp.*, No. CIVA07-4130 NLHAMD, 2010 WL 1050043, at *14 (D.N.J. Mar. 17, 2010) (granting summary judgment on employer's breach of contract claim against former employee who, despite multiple requests to return employer's confidential information, improperly retained such information and disseminated it to her attorney in an attempt to use the information as a "litigation sword"); *Haught v. Louis Berkman LLC*, 417 F. Supp. 2d 777, 784 (N.D.W. Va. 2006) (granting summary judgment on employer's breach of contract claim when former employee disclosed employer's confidential information to her attorneys, despite former employee not disclosing information to employer's competitors); *Zahodnick v. Int'l Bus. Mach. Corp.*, 135 F.3d 911, 915 (4th Cir. 1997) (affirming summary judgment on employer's breach of contract claim against former employee who "retained confidential materials belonging to [the employer] after termination of his employment and forwarded those documents to his counsel without [the employer's] consent").

Third, Battle's breach has damaged Dollar General. As an initial matter, Battle agreed that a breach of the non-disclosure and/or return of materials provisions of the 2022 Employment Agreement and the 2024 Employment Agreement constitutes damages in the form of irreparable harm. (*See* Ex. 1 to Compl. at ¶ 21.c & Ex. 2 to Compl. ¶¶ 21.c, 25.) Additionally, Tennessee law recognizes that actual damages stemming from a breach of contract may be uncertain or speculative, and that "[u]pon breach of a valid and binding contract, the law infers some damages, and generally the person guilty of the breach is liable at least for nominal damages, if

12

actual damages cannot be proved." *Morristown Lincoln-Mercury, Inc. v. Roy N. Lotspeich Pub. Co.*, 298 S.W.2d 788, 795 (Tenn. Ct. App. 1956); *see also Cool Springs Fin. Grp., LLC v. Albright*, No. 3:19-CV-964, 2024 WL 1144225, at *25 (M.D. Tenn. Mar. 15, 2024) (denying former employee's motion for summary judgment where former employee argued that employer could not establish damages on employer's breach of contract claim based on former employee's taking of confidential information because employer was entitled to, at minimum, nominal damages).

Accordingly, Dollar General has a strong likelihood of success on its breach of contract claim against Battle.

**B.     Dollar General Will Suffer Irreparable Harm Without an Injunction**

Without an injunction, Dollar General will suffer irreparable harm from Battle's refusal to return its confidential, proprietary, trade secret, and attorney-client privileged information, and threat to further disclose such information.

Courts throughout the country have held that the harm caused by the disclosure of a party's privileged information constitutes irreparable harm. *See, e.g., Owens v. Off. of Dist. Att'y for Eighteenth Jud. Dist.*, 896 F. Supp. 2d 1003, 1014 (D. Colo. 2012) (stating that "the general injury or harm caused by the improper disclosure of materials subject to the attorney-client privilege is irreparable"); *U.S. v. Philip Morris, Inc.*, 314 F.3d 612, 622 (D.C. Cir. 2003), *abrogated on other grounds by Mohawk Indus., Inc. v. Carpenter*, 558 U.S. 100 (2009) (finding that "the general injury caused by the breach of the attorney-client privilege" is "clear enough" to establish irreparable harm to a party); *Matter of 636 S. 66th Terrace, Kansas City, Kan.,* 835 F. Supp. 1304, 1306 (D. Kan. 1993) (finding, with respect to materials

13

improperly seized by a party, the "seizure of materials protected by the attorney-client privilege . . . gives rise to irreparable injury"); *Prudential Ins. Co. of Am. v. Massaro*, No. 2:97-CV-2022, 2000 WL 1176541, at *17-18 (D.N.J. Aug. 11, 2000), *aff'd*, 47 F. App'x 618 (3d Cir. 2002) (holding that even without a prospective threat of wrongdoing, "a threat of irreparable injury persists" where a party may continue to disclose client confidences and once confidential information "is made public the status quo ante cannot be restored"); *In re Perrigo Co.*, 128 F.3d 430, 437 (6th Cir. 1997) (granting mandamus to review district court order compelling production of documents, because "forced disclosure of privileged material may bring about irreparable harm.").

Additionally, courts have held that disclosure of an employer's confidential information by a former employee, even if to the former employee's attorneys or a governmental agency, constitutes irreparable harm. *See, e.g., Zahodnick*, 135 F.3d at 915 (affirming preliminary injunction where former employee signed nondisclosure agreements according to which he would not disclose confidential information to anyone outside of employer but, after he left employer's employment, forwarded confidential materials belonging to employer to his counsel without employer's consent); *Haught*, 417 F. Supp. 2d at 786 (finding irreparable harm where former employee disclosed employer's confidential information to her attorneys and the EEOC).

Moreover, Battle expressly agreed in the 2022 Employment Agreement and the 2024 Employment Agreement that a breach of the non-disclosure and/or return

14

of materials provisions constitutes irreparable harm. (*See* Ex. 1 to Compl. at ¶ 21.c & Ex. 2 to Compl. ¶¶ 21.c, 25.) As discussed above, Battle is in breach of the non-disclosure and return of materials provisions of the 2022 Employment Agreement and the 2024 Employment Agreement, and his continued breach of those provisions, constitutes irreparable harm.

Accordingly, Dollar General is entitled to a temporary restraining order and preliminary injunction to preserve the status quo and to stop Battle from further disclosing Dollar General's confidential, proprietary, trade secret, and attorney-client privileged information which he unlawfully possesses.

### C. The Court's Issuance of an Injunction Would Not Harm Defendant or Others

"The third factor for a court to consider is whether the issuance of the injunction would cause substantial harm to others." *Tenke Corp.*, 511 F.3d at 550-51 (internal quotation marks omitted). "In considering this factor, the Court must (1) balance the harm [p]laintiff would suffer if its request for a preliminary injunction were denied against the harm [d]efendant would suffer if an injunction were to issue, and (2) assess the impact the preliminary injunction might have on relevant third parties." *I Love Juice Bar Franchising, LLC v. ILJB Charlotte Juice, LLC*, No. 3:19-CV-981, 2019 WL 6050283, at *13 (M.D. Tenn. Nov. 15, 2019) (quoting *Procter & Gamble Co. v. Georgia–Pac. Consumer Prod. LP*, No. 1:09-CV-318, 2009 WL 2407764, at *10 (S.D. Ohio Aug. 3, 2009)).

Here, an injunction would protect Dollar General's contractual right under the 2022 Employment Agreement and the 2024 Employment Agreement to the protection

of its confidential, trade secret, and attorney-client privileged information. On the other hand, the only potential harm to Battle is that he could not continue to violate his contractual obligations with respect to Dollar General's confidential, proprietary, trade secret, and attorney-client privileged information. Battle can, if he chooses, submit a Charge to the EEOC omitting information that he was contractually obligated to not take from Dollar General, to return to Dollar General upon termination, and/or guard and protect from disclosure. Moreover, the EEOC retains the ability to seek all non-privileged information to aid in any investigation of Battle's Charge through either informal requests or subpoenas.[5] Battle will not be prohibited from ultimately seeking to discover or use such non-privileged information, provided he uses the appropriate mechanisms to obtain such information which in turn provides Dollar General with appropriate mechanisms to protect such information from inappropriate disclosure. Accordingly, balancing the potential harms weighs heavily in favor of granting Dollar General's motion for injunctive relief.

**D.    An Injunction Would Serve the Public Interest**

The public has a strong interest in favor of upholding contracts. *AmeriGas Propane, Inc. v. Crook*, 844 F. Supp. 379, 390 (M.D. Tenn. 1993); *FirstEnergy Sols. Corp. v. Flerick*, 521 F. App'x 521, 529 (6th Cir. 2013). An injunction requiring Battle to abide by his contractual obligations would therefore serve the public interest. Because there is no suggestion that Battle was coerced to enter into the Employment

---

[5] Requiring information to be obtained through such procedures permits Dollar General to designate such information as confidential, proprietary, and/or trade secret, in order to prevent its disclosure through any subsequent FOIA requests, and to assert its claim of attorney-client privilege where appropriate.

16

Agreement or that it was somehow forced upon him, and because the Employment Agreement does not violate public policy, the public's interest requires that Battle be held to his agreement. *Clemens*, 2013 WL 5936671, at *11.

## V. CONCLUSION

For the foregoing reasons, Dollar General respectfully requests that this Court grant its Motion for Temporary Restraining Order and Preliminary Injunction against Battle pending an arbitration on the merits before AAA.

DATED: November 7, 2024

*/s/ Charley Williamson*
Charley Williamson
Tenn. Bar No. 018287
Charley.Williamson@hklaw.com
Taylor Jarvis Askew
Tenn. Bar No. 033193
Taylor.Askew@hklaw.com
Holland & Knight
511 Union Street
Suite 2700
Nashville, TN 37219
Tel: (615) 244-6380

Amy Morrissey Turk
(*Pro Hac Vice forthcoming*)
aturk@mcguirewoods.com
Virginia Bar No. 44957
McGuireWoods LLP
World Trade Center
101 West Main Street
Suite 9000
Norfolk, VA 23510-1655
Tel: (757) 640-3711

17

Joel S. Allen
(*Pro Hac Vice forthcoming*)
jallen@mcguirewoods.com
Texas Bar No. 00795069
Paul M. Chappell
(*Pro Hac Vice forthcoming*)
pchappell@mcguirewoods.com
Texas Bar No. 24097489
McGuireWoods LLP
2601 Olive Street
Suite 2100
Dallas, TX 75201
Tel: (214) 932-6400

Laura J. Cooley
(*Pro Hac Vice forthcoming*)
lcooley@mcguirewoods.com
Virginia Bar No. 93446
McGuireWoods LLP
Gateway Plaza
800 East Canal Street
Richmond, VA 23219
Tel: (804) 775-1675

**ATTORNEYS FOR DOLLAR GENERAL CORPORATION**

**CERTIFICATE OF SERVICE**

On November 7, 2024, the above and foregoing document was served via U.S. Mail and e-mail to:

Johné Battle
jbattle@consultant.com
11523 Palmbrush Trl PMB 378
Unit 379
Lakewood Rich, FL 34202

David A. Burkhalter II, Esq.
david@burkhalterlaw.com
The Burkhalter Law Firm, P.C.
111 S. Central Street
P.O.B. Box 2777
Knoxville, TN 37901

/s/ *Charley Williamson*